IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JENNIFER M. CANONICO, )
    Plaintiff, )
)
v. ) 2:13-CV-733
)
COMMISSIONER OF )
SOCIAL SECURITY, )
    Defendant. )

MEMORANDUM and ORDER

Mitchell, M.J.:

On May 29, 2013, Jennifer M. Canonico, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's denial of her application for Supplemental Security Income benefits.

On May 29, 2013, Jennifer M. Canonico, by her counsel filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381. Cross motions for summary judgment have been filed. For the reasons set forth below, the defendant's motion (ECF No.14) will be granted, the plaintiff's motion (ECF No.12) will be denied and the decision of the Commissioner will be affirmed.[1]

The instant application for Supplemental Security Income Benefits was filed on August 31, 2010 (R.106-112). On November 9, 2010, benefits were denied (R.29-33). On January 13, 2011, the plaintiff requested a hearing (R.34) and pursuant to that request a hearing was held on May 17, 2012 (R.332-357). In a decision filed on July 16, 2012, an Administrative Law Judge

---

[1] All parties have consented to proceed before a united States Magistrate Judge pursuant to 28 U.S.C. §636 et.seq.

denied benefits (R.11-26), and on September 12, 2012, the plaintiff requested reconsideration of that determination (R.9-10). On April 24, 2013, the Appeals Council affirmed the prior determination (R.5-7). The instant complaint was filed on May 29, 2013.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Johnson v. Comm'r. 529 F.3d 198 (3d Cir. 2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F.3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> the inability to do any substantial gainful activity by reason of
> any medically determinable physical or mental impairment
> which can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less than 12
> months.

In addition, a person will be considered disabled if he/she is

> (a) ... permanently and totally disabled as defined under a State
> plan approved under title XIV or XVI of the Social Security Act,
> as in effect for October 1972; (b) ... received aid under the State
> plan ... for the month of December 1973 and for at least one
> month prior to July 1973; and (c) ... continue[s] to be disabled as
> defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

> impairment [which] result[s] from anatomical, physiological, or
> psychological abnormalities which [are demonstrated] by
> medically acceptable clinical and laboratory diagnostic
> techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on May 17, 2012, the plaintiff appeared with counsel (R.334) and testified that she was born on May 30, 1984 (R.305); that she completed the eighth grade and received a certified nursing assistant's certificate (R.335); that she worked as a waitress, home healthcare provider and a van driver (R.336) and that she stopped working because she was experiencing panic attacks (R.337).

The plaintiff also testified that she hurt her back in a car accident (R.339); that she declined pain medication for fear of addiction (R.341); that she experiences panic attacks about once or twice a day (R.338, 347, 351); that she also experiences depression (R.344-347); that she

takes medication for her mental condition (R.350); and that she has been seeing a psychiatrist for over two years (R.344).

At the hearing a vocational expert was called upon to testify (R.352-356). The witness classified the plaintiff's prior work as unskilled to semi-skilled in nature at the medium to light exertional level (R.353). When asked to assume an individual of the plaintiff's age, educational background and vocational history who is limited to light exertional work at simple, routine, repetitive tasks she replied that such an individual could not perform any of the plaintiff's past work (R.353). However, she also testified that there were a large number of jobs such an individual could perform (R.353-354). The witness further testified that if the individual had a large degree of absenteeism, she could not be employed (R.354-355). In addition, she testified that if the individual was unable to concentrate, perform on schedule, maintain regular attendance and perform at a consistent pace she could not be employed (R.355-356).

In addition, certain other evidence was considered.

The plaintiff was treated at the UPMC St. Margaret Hospital emergency room on April 3, 2010 for an atypical chest pain and advised to follow up with her physician (R.152-156).

The plaintiff was treated at the West Penn Hospital emergency room between December 29, 2009 and August 10, 2010 for pregnancy problems and dyspnea (R.157-178).

The plaintiff was treated at Bloomfield Medical Associates between March 12, 2010 and September 15, 2010 for panic attacks. Medication was prescribed (R.185-193).

In a report of a clinical psychological evaluation conducted on October 22, 2010, Shama Olfman, Ph.D. diagnosed depression and a panic disorder. It was noted that the plaintiff had extreme limitations (R.196-201).

In a residual functional capacity evaluation completed on October 29, 2010, it is noted that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds and stand, walk or sit for about six hours. The plaintiff was found to be only partially credible (R.202-208).

In a psychiatric review completed on November 5, 2010, Roger Glover, Ph.D. noted a depressive and panic disorder. The effects were said to be no more than moderate and not severe enough to meet the disability criteria. The plaintiff was said to be employable in production oriented jobs requiring little independent decision making. She was also said to be only partially credible (R.209-224).

The plaintiff was treated twice by Todd A. Pepper, D.O. between December 12, 2011 and February 7, 2012 for low back pain (R.231-237).

The plaintiff was treated by Dr. Sangeeta Komerally between July 31, 2009 and February 22, 2012 for depression and anxiety and lower back pain. Medication was prescribed (R.238-312).

The plaintiff was treated by P.K. Mullick, M.D. and associates between June 16, 2010 and March 15, 2012 for depression and panic attacks. Medication was prescribed (R.179-184, 313-329).

In a mental capacity evaluation completed on May 15, 2012, Dr. P.K. Mullick indicated that the plaintiff would have difficulty working (R.330-331).

Based on the evidence presented, the Commissioner determined:

The claimant has not engaged in substantial gainful activity since August 19, 2010, the application date…

The claimant has the following severe impairments: anxiety disorder with panic attacks, depression, and low back pain…

[The] claimant's back condition [does] not result[] in an inability to ambulate effectively or perform fine and gross movements effectively on a sustained basis. Her physical examinations showed some tenderness to palpation, but indicated normal gait, range of motion, and strength. In addition, she was able to perform physical activities including household chores.

In addition, the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Sections 12.04 or 12.06 … To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has <u>mild</u> restrictions. Psychological consultative examine, Dr. Olfman stated that the claimant had some limitations in shopping, cooking, and using public transportation. However, she also found that the claimant was [cap]able of maintaining a personal residence, caring for her grooming and hygiene, and paying her bills. The claimant stated in her function report that she takes her son to school, cleans the house, does the laundry, takes out the trash, prepares meals, talks to others on the phone, and attends church once a week. Overall, the record indicates mild limitations in this area.

In social functioning, the claimant has <u>moderate</u> difficulties. In regard to social interactions, the claimant reported that she talks to others on the phone and attends church once a week. However, she also reported problems with mood swings and irritability. Treating psychiatrist Dr. Mullick stated that the claimant would often have difficulty interacting with supervisors and co-workers. Psychological consultative examiner Dr. Olfman stated that the claimant had an adequate ability to communicate, to make friends, and to get along with family, friends and neighbors. She further found that the claimant's social maturity was adequate for interaction with supervisors, co-workers, and peers, but that the claimant would have difficulty interacting with the public due to panic attacks. Further, she displayed a limited interest in group activities. The residual functional capacity accommodates the claimant's limitations in this area by precluding her from interaction with the general public.

With regard to concentration, persistence or pace, the claimant has <u>moderate</u> difficulties. In general, the claimant's mental status examinations revealed that she had adequate concentration, memory, thought process, and speech. She also was able to perform a number of activities … The residual functional capacity accommodates the claimant's limitations in this area by limiting her to work

consisting of simple, routine, repetitive tasks involving no exercise of independent judgment or discretion and no piece-work production rate pace.

Finally, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. Under Section 12.04, the claimant has not demonstrated a medically documented chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensation; or current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. Under Section 12.06, the claimant has not demonstrated a complete inability to function outside the area of her own home….

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work … except that she is limited to work consisting of simple, routine, repetitive tasks involving no exercise of independent judgment or discretion, no piece-work production rate pace, and no interaction with the general public….

The claimant has alleged disability due to anxiety, depression, and low back pain....

After careful consideration of the evidence, I find that some of the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.…

Regarding credibility, the claimant's self-reports are inconsistent regarding the timeline of her illness and her reasons for stopping work in January, 2010. She testified that her panic attacks began in January while she was working as a van

driver … [However] Dr. Pepper noted employment as a bus driver in December 2011.

The claimant's function report also indicates that she has generally been mentally capable of performing a number of activities. She performs household chores, and is able to care for her young son with occasional help from friends and family. She talks to others on the phone and attends church once a week. She reported hobbies including reading and playing games with her son, and said that she was good at following written and spoken instructions….

I give some weight to the opinions of Dr. Olfman and Dr. Mullick, but find that they over-estimated the severity of the claimant's functional limitations….

Finally, I give great weight to the opinion of State Agency psychological adjudicator Roger Glover, PhD, who found that the claimant was able to perform simple one- to two- step tasks, maintain regular attendance, ask simple questions, accept instruction, and function in a production-oriented job requiring little independent decision making. Dr. Glover's opinion is largely consistent with the claimant's mental health treatment records and her reported activities …

Overall, the evidence indicates that the claimant's back pain is less severe than she has alleged, and that she is physically able to perform work at the light exertional level….

As for the opinion evidence, I give some weight to the October 2010 assessment of State Agency medical adjudicator Mary Ellen Wyszomierski MD. Dr. Wyszomierski found that the claimant [can] perform work at the medium exertional level and was frequently able to perform postural adaptions but could not climb ropes or scaffolds. I have limited the claimant to light work in order to accommodate her consistent complaints of pain, but do not find that she requires postural restrictions because her physical examinations have generally showed intact strength and range of motion.

In sum, the above residual functional capacity assessment appropriately reflects the medical evidence. The residual functional capacity addresses the claimant's complaints of back pain by limited her to light work, while her mental symptoms are accommodated by restrictions in the areas of social interaction and concentration, persistence, and pace….

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform….

The claimant has not been under a disability, as defined in the Social Security Act, since August 19, 2010, the date the application was filed… (R.16-26).

The record discloses that the plaintiff suffers from both physical and mental impairments. However, the severity of these impairments is the question which had to be resolved. After reviewing all the evidence of the physical maladies, the Commissioner concluded that while the plaintiff does experience low back pain her allegations of intensity are not supported by the record. As a matter of credibility, the issue of resolving any conflicts rests with the Commissioner. F.R. Civ. P. 56; <u>Diaz v. Commissioner</u>, 577 F.3d 500, 506 (3d Cir.2009). Accordingly, her conclusion that the plaintiff does not requirements as a result of her physical disability is supported by substantial evidence.

In a similar manner the Commissioner reviewed the record setting forth the mental impairments and likewise concluded that the severity of those ailments did not meet the listing requirements and plaintiff's allegations were not fully credible. For this reason, her conclusion is likewise supported by substantial evidence.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56; <u>Lichtenstein v. U.P.M.C.</u>, 691 F.3d 294, 300 (3d Cir.2012). In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, the defendant's motion for summary judgment will be granted; the plaintiff's motion for summary judgment will be denied, and the decision of the Commissioner will be affirmed.

An appropriate Order will be entered.

ORDER

AND NOW, this 27th day of December, 2013, for the reasons set forth in the foregoing Memorandum, the defendant's Motion for Summary Judgment (ECF No.14) is GRANTED; the plaintiff's Motion for Summary Judgment (ECF No.12) is DENIED, and the decision of the Commissioner is AFFIRMED.

s/ Robert C. Mitchell
United States Magistrate Judge